## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYSON FOODS, INC.,<br>2210 West Oaklawn Drive, Springdale, AR<br>72762-6999<br><br>      Plaintiff,<br><br>      v.<br><br>U.S. DEPARTMENT OF AGRICULTURE,<br>1400 Independence Ave., S.W.,<br>Washington, D.C. 20250<br><br>and<br><br>U.S. DEPARTMENT OF AGRICULTURE,<br>FOOD SAFETY AND INSPECTION<br>SERVICE, 1400 Independence Ave., S.W.,<br>Washington, D.C. 20250<br><br>and<br><br>EDWARD T. SCHAFER,<br>*in His Official Capacity as United States*<br>*Secretary of Agriculture,*<br>U.S. Department of Agriculture<br>1400 Independence Ave., S.W.,<br>Washington, D.C. 20250,<br><br>and<br><br>RICHARD A. RAYMOND, M.D., *in His*<br>*Official Capacity as Under Secretary for*<br>*Food Safety,* U.S. Department of<br>Agriculture, Food Safety and Inspection<br>Service, 1400 Independence Ave., S.W.,<br>Washington, D.C. 20250<br><br>      Defendants. | Civil Action No. |

## COMPLAINT
## FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

Plaintiff Tyson Foods, Inc. ("Tyson"), in its complaint against the U.S. Department of Agriculture (the "Department," or "USDA"), Edward T. Schafer, in his official capacity as Secretary of the Department, the Food Safety and Inspection Service of the Department ("FSIS"), and Richard A. Raymond, M.D., in his official capacity as Under Secretary for Food Safety at FSIS (collectively "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      Various U.S. Government agencies, including USDA, currently are focused on managing the prudent use of antibiotics in humans and animals in order to minimize antimicrobial resistance and thereby preserve the effectiveness of human antibiotics for public health purposes. *See generally http://fsrio.nal.usda.gov/document_reslist.php?product_id=71.*

2.      Former USDA Under Secretary for Food Safety, Catherine Woteki, addressed the issue directly in a 2000 speech.  She explained that the agricultural and veterinary use of antibiotics must be "*managed*," that prudent use rather than elimination of antibiotics is the key, and that progress toward reductions in the use of antibiotics is beneficial.  Catherine Woteki, "Antimicrobial     Resistance     –     the     USDA     Perspective,"     *available     at* http://www.fsis.usda.gov/Frame/FrameRedirect.asp?main=http://www.fsis.usda.gov/oa/speeches /2000/cw_antirest.htm.  She placed emphasis on "the word *managed*, because, a totally risk-free system of food production is an unreasonable and unattainable goal."  *Id.*

3.      Tyson has been an industry leader in managing and reducing the use of agricultural antibiotics.  Tyson has reduced the use of antibiotics in its poultry production practices and eliminated the post-hatch use of antibiotics that promote human resistance to antibiotics in its poultry products carrying labels indicating that chickens are "raised" without such antibiotics.

4.     In May 2007, after securing label approval from USDA, Tyson began informing consumers about the availability of chicken that is raised without the use of antibiotics. This development was applauded by various consumer groups.

5.     Tyson's competitors have actively opposed Tyson's attempts to inform consumers of important differences in Tyson's raising practices as they relate to antibiotics and have urged USDA to take adverse action against Tyson.

6.     This action arises because USDA has recently adopted and implemented a new regulatory standard for the use of antibiotics in poultry that draws no distinction between practices applied while birds are being "raised" (*i.e.*, the period between hatching and slaughter), on the one hand, and while the embryos are still *in ovo* (*i.e.*, in the shell before hatching), on the other.  USDA's new regulatory standard does not recognize that prudent management and reduction of antibiotic use in poultry can proceed in steps and that eliminating antibiotics that promote human resistance while *raising* chickens is a positive first step to combat antimicrobial resistance in humans.

7.     USDA also has improperly applied this newly adopted regulatory standard to conclude that labels previously approved by USDA do not satisfy USDA's requirement that products be labeled in a manner that is not false and misleading and cannot be applied to Tyson's products after June 18, 2008.

8.     USDA has failed to support properly its new regulatory approach.  Instead, USDA adopted and implemented this new regulatory standard without following legally required procedures, and without giving fair notice of the basis for its action to Tyson and other interested members of the public.  USDA instead acted precipitously, and on the basis of undisclosed *ex parte* submissions by a few of Tyson's competitors that neither Tyson nor other interested parties

3

were able to review and comment upon. The failure of USDA to follow the dictates of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, has led directly to an under-informed and defective regulatory outcome that does not take account of how USDA interprets the term "raised" in indistinguishable contexts, does not take account of the public health benefits of alerting consumers to reductions in antibiotic use, and does not take account of actual practices in the poultry industry.

9.      Tyson appears to be the first victim of USDA's flawed process, but the Department is also proceeding in a haphazard manner in applying its new regulatory standard to other poultry producers as well. However, because USDA has allowed Tyson only until June 18, 2008 to conform the company's labeling practices to the Department's defective new standard, the situation is urgent.

10.     USDA has directed Tyson to change its labeling for more than 400 products by June 18th under its new regulatory standard. Significantly, however, USDA has not imposed the same June 18 removal deadline (or, indeed, any deadline at all) on any of the other producers that are using labels stating that their poultry products are "raised without antibiotics that promote human antibiotic resistance," or any other antibiotic claim. Moreover, there are no exigent food safety or public health concerns at issue here. Accordingly, USDA has no excuse for abandoning compliance with the Administrative Procedure Act or for relying instead on undisclosed information submitted by certain interested parties that has not been subjected to public notice and comment.

11.     USDA's new regulatory standard was adopted and implemented by the Food Safety and Inspection Service ("FSIS"), an agency within the Department, in a series of official letters and statements issued June 2, 2008 through June 4, 2008. In those releases, which were

not issued pursuant to any public notice and comment, FSIS set forth a new regulatory regime regarding the labeling of poultry products produced from chickens that receive *in ovo* vaccinations incorporating antibiotics. Under Defendants' new regulatory standard, the injection of an antibiotic *in ovo* would render "false and misleading" any label claiming that a chicken product was "Raised without antibiotics that impact antibiotic resistance in humans," *except* where the antibiotic is "used as a preservative in a vaccine and added to the vaccine at the vaccine manufacturing site."

12.    This new regulatory regime (i) was adopted and applied without the notice-and-comment procedures required for promulgating new, legally binding rules, (ii) was based in part on *ex parte*, undisclosed information submitted by market competitors, which neither Tyson nor interested members of the public have had the opportunity to review or to comment upon, and (iii) conflicts directly with the regulatory standards adopted by another agency within the Department after appropriate notice-and-comment rulemaking. Defendants' actions in adopting the standards for labeling of poultry products that have been administered antibiotics *in ovo* were taken without observance of procedures required by law and are arbitrary, capricious, an abuse of discretion, and not in accordance with law under the APA, 5 U.S.C. § 706.

13.    This is an action to hold unlawful and set aside Defendants' new regulatory regime, which was adopted unlawfully and is arbitrary and capricious. Tyson seeks a judgment declaring that Defendants' new regulatory regime (1) constitutes unlawful rulemaking without notice and comment in violation of the APA, 5 U.S.C. §§ 553, 706(2)(D), (2) is an arbitrary and capricious exercise of the Secretary's authority in violation of the APA, 5 U.S.C. § 706(2)(A)&(D), and (3) is, therefore, without force and effect.

14.     Tyson further seeks an injunction barring Defendants from enforcing this unlawful policy, or decisions made thereunder, and an injunction requiring Defendants to follow appropriate notice-and-comment procedures before issuing or enforcing any new standard concerning practices that may qualify for a "Raised Without Antibiotics" label.

15.     Additionally, Tyson seeks to set aside Defendants' application of this policy to Tyson in a manner that denies Tyson a reasonable and appropriate period of time to transition from current labeling to new labeling that would conform to Defendants' new regulatory standard. Tyson requests a declaratory judgment that Defendants' denial of its request for a reasonable and appropriate transition period was arbitrary, capricious, an abuse of discretion, and not in accordance with law in violation of the APA, 5 U.S.C. § 706(2)(A)&(D), and an injunction prohibiting Defendants from enforcing its new regulatory standard against Tyson.

16.     This lawsuit does not involve the exigent circumstances present where products or labeling present potential health, safety, or dietary problems to consumers. Rather, this case involves a situation where a federal agency has relied upon *ex parte* submissions from one set of industry participants (i) to adopt a regulatory rule without necessary notice and comment rulemaking, and (ii) to implement that regulatory rule in a manner that would impose immediate, irreparable, and undue economic harm on Tyson and others while affording other competing entities a manifestly unfair competitive advantage in the marketplace. Defendants should not have proceeded in this manner, and they must not be allowed to do so.

**JURISDICTION AND VENUE**

17.     Tyson brings this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, because the Department of Agriculture has engaged in final agency action presenting actual controversies for which Tyson is entitled to relief.

6

18.     The relief requested is authorized pursuant to 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (further relief), and 5 U.S.C. §§ 701-706.

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

20.     Tyson's claims are ripe for judicial review as Tyson challenges the legal insufficiency of Defendants' final agency actions and will suffer injury absent relief from the Court.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because at least one defendant in this action resides in this judicial district, and because a substantial part of the events giving rise to Tyson's claims occurred in this judicial district.

## PARTIES

22.     Plaintiff Tyson is a Delaware corporation, which has its principal office at 2210 West Oaklawn Drive, Springdale, Arkansas 72762-6999.  Tyson is a leading producer and distributor of chicken, beef, and pork products.  Tyson has one of the most well recognized brand names in the food industry.

23.     Defendant U.S. Department of Agriculture, which has its principal office at 1400 Independence Ave., S.W., Washington, D.C. 20250, is a federal agency headquartered in the District of Columbia.

24.     Defendant U.S. Department of Agriculture, Food Safety and Inspection Service, which has its principal office at 1400 Independence Ave., S.W., Washington, D.C. 20250, is an agency within the Department of Agriculture responsible for, among other things, ensuring that poultry is properly labeled.

25.     Defendant Edward T. Schafer is sued in his official capacity as United States Secretary of Agriculture.  As Secretary, Mr. Schafer has ultimate responsibility for the activities

of the Department, including those actions complained of herein. Secretary Schafer maintains an office at 1400 Independence Ave., S.W., Washington, D.C. 20250.

26.     Defendant Richard A. Raymond, M.D., is sued in his official capacity as Under Secretary of Food Safety. As Under Secretary of Food Safety, Dr. Raymond is responsible for the activities of FSIS, including the actions complained of herein. Dr. Raymond maintains an office at 1400 Independence Ave., S.W., Washington, D.C. 20250.

## GENERAL ALLEGATIONS

### I.     Statutory And Regulatory Background.

27.     Under the Poultry Products Inspection Act, 21 U.S.C. § 451 *et seq.*, the Department has exclusive jurisdiction to approve all aspects of labels and labeling for poultry products.

28.     FSIS is the agency within the Department that has been delegated the authority to regulate poultry labels and labeling.

29.     Companies must submit all proposed labels and labeling to the Department for approval before such materials may be used in commerce with poultry products.

30.     The National Organic Program administered by USDA's Agricultural Marketing Service ("AMS") permits poultry to be labeled "organic" so long as antibiotics are not administered *after the first day of life. See* 7 C.F.R. § 205.236(a)(1). This rule was promulgated through formal rulemaking, after public notice and comment.

31.     Similarly, a recently proposed AMS standard, subject to notice-and-comment rulemaking, allows the marketing claim "naturally raised" for livestock and meat so long as natural practices are employed from "birth to slaughter." 72 Fed. Reg. 67,268 (Nov. 28, 2007). Companies may qualify to make certain claims under this program if they do not administer, among other things, antibiotics to livestock after birth.

II.  **Background Facts Leading To USDA's Adoption of Its "Raised Without Antibiotics" Regulatory Regime.**

32.     Following industry standards, Tyson and most market participants inject eggs two or three days prior to hatch, or *in ovo*, with a vaccination to prevent Marek's disease.

33.     The vaccine as formulated by the manufacturer contains an antibiotic as a preservative to protect the integrity of the vaccine.

34.     In turn, Tyson and, upon information and belief, many other market participants administer the *in ovo* vaccination by mixing it with a diluting solution, to which gentamicin sulfate is added, to sterilize the vaccine solution and prevent cross contamination of the needles used to inject the vaccine into the eggs.  Gentamicin sulfate is an antibiotic.

35.     Unlike many market participants, Tyson does not add growth promoting antibiotics to its chicken feed.

36.     Tyson does use ionophores in its chicken feed to prevent against coccidiosis, an intestinal illness, in chickens.

37.     Whether ionophores properly should be considered antibiotics has been an issue of significant debate within the poultry industry.  There has been no serious dispute, however, that ionophores are not used in antibiotics administered to humans and therefore do not affect the efficacy of human antibiotics or promote human resistance to them.

38.     On May 1, 2007, Tyson filed three applications with the Department and FSIS, followed by a fourth on May 8, 2008, seeking labels to accompany its poultry that indicate its chickens are "Raised Without Antibiotics."  Tyson's applications specifically disclosed that (i) it uses ionophores in poultry feed, and (ii) its claim was limited to the period when chickens are "raised," which Tyson defined as "the growing period," that is "beginning at time of hatch and ending at time of slaughter."

39.     On May 11, 15, and 16, 2007, FSIS approved Tyson's applications for use of "Raised Without Antibiotics" on its poultry labels and, in doing so, concluded that Tyson's labels were not false or misleading.  Upon information and belief, other market participants likewise sought approval of labels claiming that their poultry products were "Raised Without Antibiotics."

40.     In early September 2007, FSIS alerted Tyson that it believed it had made a mistake and that it intended to revoke approval of the label "Raised Without Antibiotics," because it now claimed a "longstanding unwritten policy" that "ionophores" meet the narrow definition of antibiotics.

41.     On November 6, 2007, FSIS informed Tyson that it intended to revoke approval of Tyson's labels bearing "Raised Without Antibiotics" because Tyson chickens are fed ionophores.

42.     Immediately thereafter, FSIS sent identical letters to Perdue Farms, Inc. and other Tyson competitors who may be affected by FSIS' determination.

43.     Tyson subsequently applied for and received approval on December 19, 2007, from FSIS for a revised label containing the qualified language "Raised Without Antibiotics that impact antibiotic resistance in humans" ("Qualified RWA Label").  FSIS also agreed that Tyson would have sufficient time to transition its unqualified label to the new Qualified RWA Label.

44.     Defendant Dr. Raymond wrote to Tyson on January 7, 2008, confirming that Tyson and the Department had reached an agreement and that the Qualified RWA Label "does not assert that the poultry was raised without any antibiotics, but rather was raised without antibiotics that impact human antibiotics resistance.  FSIS has found that the claim describes the situation in a truthful and non-misleading way."

10

45.      On April 16, 2008, Tyson competitors, namely Sanderson Farms, Inc., Perdue Farms, Inc., and Foster Farms ("Tyson's Competitors"), as well as the Truthful Labeling Coalition (formed by Tyson's Competitors), filed a letter petition with FSIS requesting that FSIS rescind Tyson's Qualified RWA Label based on Tyson's use of ionophores and its practice of administering *in ovo* vaccines that contain small doses of antibiotics. The petition acknowledged that Tyson's "raised" claim only applied to the period from post-hatch to slaughter.

46.      FSIS issued a request for information to Tyson on April 30, 2008. Upon information and belief, on the same date, FSIS issued a request for information to Tyson's Competitors.

47.      Tyson made submissions to FSIS on May 2, 6, and 7, 2008, explaining its practice of *in ovo* vaccination and dispelling the accusations leveled in the petition.

48.      On May 5, 2008, Tyson's Competitors submitted information to FSIS in support of their April 16, 2008 petition.

49.      On information and belief, Tyson's Competitors made numerous informal and undisclosed submissions to FSIS as part of their effort to convince FSIS to adopt a new regulatory policy that would prohibit "Raised Without Antibiotics" claims by market participants that administer *in ovo* vaccines that contain small doses of antibiotics.

50.      Prior to June 10, 2008, Tyson was not provided with the information submitted by Tyson's Competitors on May 5, 2008, and thereafter, or afforded the opportunity to review or respond to it.

51.      On May 5, 2008, Tyson informed Defendants that it was willing to halt the practice of administering *in ovo* vaccines that contain small doses of antibiotics if necessary to

11

avoid another costly disruption in the distribution and marketing of its products. Defendants never responded to this offer.

52.     Due to continued uncertainty and in an effort to avoid further disruptive controversy, on May 30, 2008, Tyson informed Defendants that it was voluntarily withdrawing the Qualified RWA Label.

53.     Tyson explained that it planned to withdraw the label subject to an orderly transition period whereby Tyson would no longer package fresh chicken products under the Qualified RWA Label by August 31, 2008, and no longer package any poultry products under the Qualified RWA Label by September 30, 2008.

**III.    Defendants' Adoption of Its New Unlawful Regulatory Regime.**

54.     On June 2, 2008, FSIS informed Tyson by letter that "FSIS will approve claims related to the use of antibiotics only when an establishment demonstrates to the satisfaction of the agency that no antibiotics were used for any purpose whatsoever at any time, with the exception of antibiotics used as a preservative in a vaccine and added to the vaccine at the vaccine manufacturing site." By this action, FSIS invalidated previously-approved labels and thereby enforced the agency's newly adopted regulatory policy against Tyson.

55.     Further applying its newly adopted standard, FSIS refused to accept the orderly time frame for voluntary withdrawal that Tyson proposed. Instead, FSIS directed Tyson to halt all use of the Qualified RWA Label by June 18, 2008, and informed Tyson that "[n]o labels bearing any form of a 'Raised without antibiotics' claim may be used after that date.'"

56.     FSIS effectively granted Tyson temporary label approval under its new regulatory standard, but only until June 18, 2008. FSIS provided no official explanation for why it would not provide for an orderly transition period to labels conforming to the agency's new standard.

57.     Defendants codified their new rule in public releases on June 3 and 4, 2008. FSIS conceded that it "had no basis to evaluate the significance" of Tyson's claim that "raised" applies only to the post-hatch period. Nonetheless, FSIS declared that it "will approve claims related to the use of antibiotics only when an establishment demonstrates to the satisfaction of the agency that no antibiotics were used for any purpose whatsoever at any time, with the exception of antibiotics used as a preservative in a vaccine and added to the vaccine at the vaccine manufacturing site."

58.     On June 3, 2008, FSIS issued a letter to counsel for several of Tyson's Competitors, advising them that based on "the information that you submitted on May 5, 2008, and information submitted by Tyson Foods, Inc., we have decided to grant your petition [to rescind Tyson's Qualified RWA Label] based on the first point made therein," namely, Tyson's *in ovo* vaccination.

59.     Also on June 3, 2008, Defendant Dr. Raymond issued a public "Statement" stating that "FSIS, along with the USDA's Agricultural Marketing Service, will initiate a public process to review policies on 'Raised without antibiotics' claims for poultry." Notwithstanding that FSIS has not yet embarked on this public process, it stated that it would apply its new rule broadly by "review[ing] any claim relating to the use of antibiotics in poultry that it has already approved for companies other than Tyson."

60.     On June 4, 2008, FSIS issued a release, in the form of an open letter to "Label Consultant Firms" and to specific parties with previously approved "Raised Without Antibiotics" claims, publicly announcing the agency's new rule regarding antibiotic "raised" claims. The release sets forth the agency's definitive regulatory position: FSIS "considers the injection of an antibiotic *in ovo* to render 'Raised without Antibiotics' or 'Raised without antibiotics that impact

antibiotic resistance in humans' claims false and misleading." Label applicants are required to conform future applications to this new regulatory standard. Significantly, however, FSIS did not command poultry producers other than Tyson that are using claims similar (or identical) to Tyson's Qualified RWA Label, and that also administer *in ovo* antibiotics, to cease using such claims by June 18, 2008.

61.     As in previous statements and letters, the June 4 release acknowledges that, despite setting a definitive new standard, FSIS continues to have numerous "significant questions about the use of [*in ovo*] antibiotics that [Defendants] did not ask before approving your claim."

62.     The June 2 and 4 letters further provide that although FSIS and AMS "intend to initiate a public process to review [their] policies," in "the interim, FSIS will approve claims related to the use of antibiotics only when an establishment demonstrates to the satisfaction of the agency that no antibiotics were used for any purposes whatsoever at any time, with the exception of antibiotics used as a preservative in a vaccine and added to the vaccine at the vaccine manufacturing site."

63.     On June 6, 2008, Tyson informed Defendant USDA about its concerns over Defendants' promulgation of a new rule regarding "raised" claims for *in ovo* administration of antibiotics. Tyson also explained that Defendants cannot justify their rejection of Tyson's proposed timetable for orderly withdrawing its label, and their imposition of an unduly burdensome, unreasonable, and unwarranted withdrawal date of June 18, 2008.

64.     On June 6, 2008, Tyson requested by letter that Defendants withdraw their new regulatory standard embodied in the letters and public statements of June 2-4, 2008, and grant Tyson 60 days from the date of the letter to achieve an orderly withdrawal of its use of the Qualified RWA Label.

65.     The letter stated that Defendants' new rule was promulgated without observance of procedures required by law, and is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

66.     The letter further stated that FSIS' new rule was adopted, and implemented against Tyson, on the basis of secret, *ex parte* "evidence" submitted by Tyson's Competitors on May 5, 2008. Neither Tyson nor any other interested member of the public was afforded an opportunity to review or respond to the material upon which FSIS relied.

67.     Tyson explained that FSIS had developed, adopted, and implemented a new regulatory rule without following the required legal procedures, and without answering or even asking the "significant questions" the agency has with regard to claims that chickens are "raised" without antibiotics when antibiotics are administered *in ovo*.

68.     Tyson also explained that FSIS' new regulatory regime conflicts with the policies adopted by the Agricultural Marketing Service ("AMS"), another agency within the Department.

69.     FSIS' June 3, 2008 Statement itself appears to recognize the inconsistency between the agency policies by noting that FSIS in conjunction with AMS will "initiate a public process to review policies on 'Raised without antibiotics' claims for poultry."

70.     Further, Tyson explained that Defendants' rejection of Tyson's temporary-approval plan and Defendants' deadline of June 18, 2008, for Tyson's withdrawal of the Qualified RWA Label was unrealistic and unreasonable. Such a deadline would impose severe and undue economic hardship on Tyson, and would harm Tyson's relationship with its customers and the public.

71.     The letter also explained that in a recent precedent, FSIS previously had granted Tyson considerably more than 15 days to transition out of its unqualified "Raised Without

Antibiotics" label. FSIS' January 7, 2008 letter to Tyson indicated that Tyson received time from the initial rescission of its unqualified label. Subsequently, on February 6, 2008, FSIS further granted Tyson "continued use of the unqualified RWA claim on existing labels until May 4, 2008," nearly five months from Tyson's application for the Qualified RWA Label and nearly six months from FSIS' letter informing Tyson of its intention to withdraw approval for the unqualified label.

72.     Moreover, Tyson's limited continued use of the Qualified RWA Label did not present any need for emergency withdrawal, since Tyson was preliminarily enjoined from using either of the claims in the unqualified or qualified labels in non-label advertising by May 1, 2008. This resulted from a lawsuit, currently on appeal, against Tyson brought by Sanderson Farms, Inc. and Perdue Farms, Inc., two of Tyson's competitors, under the Lanham Act, 15 U.S.C. § 1125.

73.     On June 10, 2008, hewing to its new policy, Defendants rejected Tyson's request for additional time to transition from its Qualified RWA labeling, requiring instead that Tyson cease packaging any poultry bearing the Qualified RWA Label after June 18, 2008, regardless of Tyson's inability to design and secure sufficient new labeling by that date. As a result, Tyson was forced to file this Complaint.

## CLAIMS FOR RELIEF

### Count I

### (Violation of 5 U.S.C. §§ 553, 706(2)(D))

74.     Tyson incorporates by reference all allegations contained in paragraphs 1 through 73 of the Complaint, as set forth fully herein.

75.     Defendants' June 2, 2008 letter to Tyson, June 3, 2008 letter and Statement, and June 4, 2008 letters set forth a new rule as defined by the APA, 5 U.S.C. § 551.

76.     Tyson is aggrieved by this new rule because, among other things, it operates to preclude Tyson from qualifying for a "Raised Without Antibiotics" label and specifically will cause Tyson undue economic hardship to comply with Defendants' deadline for withdrawal under that new rule.

77.     Tyson has exhausted all prescribed administrative remedies, and Defendants' new rule constitutes final agency action.

78.     Defendants' new rule is not an interpretive rule, general statement of policy, or rule of agency organization, procedure, or practice, 5 U.S.C. § 553(b)(A).

79.     Defendants' new rule was subject to the rulemaking requirements of the APA. 5 U.S.C. § 553, but Defendants did not comply with those requirements.

80.     Defendants did not publish a general notice of rulemaking in the Federal Register, nor did they provide Tyson or other interested members of the public an opportunity to submit comments of any kind on the rule.

81.     In promulgating this new rule, Defendants considered evidence submitted by interested parties without disclosing such information to Tyson or other interested members of the public to review or comment upon.

82.     Defendants adopted this rule without answering or even asking the "significant questions" they consider necessary to conclude whether administration of antibiotics *in ovo* can ever qualify for a "Raised without antibiotics" label.

83.     Defendants' new rule was promulgated in violation of the APA's notice-and-comment requirements, 5 U.S.C. § 553, and thus constituted agency action without observance of procedures required by law, 5 U.S.C. § 706(2)(D).

84.     Accordingly, this new rule is unlawful and must be set aside.

## Count II

### (Violation of 5 U.S.C. § 706(2)(A))

85.     Tyson incorporates by reference the allegations contained in paragraphs 1 through 84 of the Complaint, as set forth fully herein.

86.     Defendants' new rule establishes that any injection of an antibiotic *in ovo*, except for antibiotics included in a vaccine by the vaccine manufacturer, prevents a poultry producer from informing consumers that it "raises" poultry without antibiotics.

87.     This rule conflicts with the policies of a sister agency within the Department. *See, e.g.*, 7 C.F.R. § 205.236(a)(1); 72 Fed. Reg. 67,268 (Nov. 28, 2007).

88.     Defendants have made no effort to reconcile their rule with these conflicting standards.

89.     Defendants' rule also fails to take account of the public health benefits resulting from the prudent management of antibiotic practices during the post-hatch raising of poultry, as a step toward the complete elimination of the use at any point during the production cycle of antibiotics that could affect human antibiotic resistance.

90.     Defendants' new rule is thus arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

91.     Accordingly, Defendants' resulting new rule is unlawful and must be set aside.

## Count III

### (Violation of 5 U.S.C. §§ 706(2)(A) & (D))

92.     Tyson incorporates by reference all allegations contained in paragraphs 1 through 91 of the Complaint, as set forth fully herein.

93.     Defendants' rejection of the timetable for Tyson's withdrawal of its Qualified RWA Label was based upon the rule it adopted in violation of the APA.

18

94.    Defendants effectively granted a temporary approval of Tyson's Qualified RWA Label up to and including June 18, 2008, but did not explain or justify why it rejected the reasonable time period proposed by Tyson to allow for an orderly transition.

95.    Defendants imposition of a 15-day timeframe for withdrawing the Qualified RWA Label conflicts with their previous practice of providing up to six months to withdraw Tyson's unqualified RWA Label.

96.    Defendants' demand that Tyson cease all packaging of over 400 different products under the qualified label by June 18, 2008, is arbitrary, capricious, an abuse of discretion, and not in accordance with law.  5 U.S.C. § 706(2)(A).

97.    Defendants failed to consider properly the regulatory criteria for extending Tyson's use of the Qualified RWA Label, and, therefore, acted without observance of procedure required by law.  5 U.S.C. § 706(2)(D).

98.    Accordingly, Defendants' implementation of its new rule with respect to Tyson is unlawful and must be set aside.


WHEREFORE, Tyson prays that this Court:

A.    Enter a declaratory judgment pursuant to 28 U.S.C. § 2201(a) in favor of Tyson and against Defendants, by:

(i)    declaring that Defendants' new regulatory standard that administration of antibiotics *in ovo* can never qualify for a "raised without antibiotics" label was adopted without observance of procedure required by law, is therefore without force and effect, and is set aside;

19

(ii)   declaring that Defendants' new regulatory standard that administration of antibiotics *in ovo* can never qualify for a "raised without antibiotics" label is arbitrary, capricious, an abuse of discretion, or not in accordance with law and is set aside;

(iii)   declaring that Defendants' application of its new rule to require Tyson to stop use of its Qualified RWA Label by June 18, 2008 was arbitrary, capricious, an abuse of discretion, or not in accordance with law and is set aside;

(B)   Issue an Order granting injunctive relief:

(i)   barring Defendants from enforcing their new regulatory standard against Tyson or anyone else holding a previously approved "Raised without Antibiotics" label until Defendants conduct lawful and proper procedures;

(ii)   compelling Defendants to follow the necessary procedures to issue a new rule on what practices may qualify for "Raised without antibiotics" labels;

(iii)   prohibit Defendants from enforcing the June 18, 2008 deadline for complete withdrawal of Tyson's Qualified RWA Label; and

(C)   Award any other relief this Court deems appropriate.

Respectfully submitted,

Alan Charles Raul (Bar No. 362605)
    *Counsel of Record
Paul J. Zidlicky (Bar No. 450196)
Gordon D. Todd (Bar No. 475203)
Eamon P. Joyce (Bar. No. 483127)
Ryan C. Morris (Bar No. 980347)

SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Plaintiff Tyson Foods, Inc.*

June 11, 2008

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Tyson Foods, Inc.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**   88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Alan Charles Raul
Sidley Austin LLP
1501 K St., N.W.
Washington, DC 20005

## DEFENDANTS

United States Department of Agriculture; United States Department of Agriculture, Food Safety and Inspection Service; Edward T. Schafer, in His Official Capacity as United States Secretary of Agriculture; Richard A. Raymond, M.O., in His Official Capacity as Under Secretary for Food Safety

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**ATTORNEYS (IF KNOWN)**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust

- ☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☒ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ◉ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○  **G.** *Habeas Corpus/ 2255* | ○  **H.** *Employment Discrimination* | ○  **I.** *FOIA/PRIVACY ACT* | ○  **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○  **K.** *Labor/ERISA (non-employment)* | ○  **L.** *Other Civil Rights (non-employment)* | ○  **M.** *Contract* | ○  **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI.  CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Lawsuit challenging Defendants' adoption of a legislative rule in violation of the Administrative Procedure Act

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐   NO ☒ |

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE  6/10/2008   SIGNATURE OF ATTORNEY OF RECORD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

    The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

    **I.**      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    **III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    **IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

    **VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    **VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.